DIXON, Respondent v. NELSON, Appellant

(107 N.W.2d 505)

(File No. 9861. Opinion filed February 17, 1961)

**Lacey & Parliman,** Sioux Falls, for Defendant and Appellant.

**Blaine Simons,** Sioux Falls, for Plaintiff and Respondent.

RENTTO, J. This action was brought to recover money which plaintiff claimed was due him for labor and materials furnished in the construction of a house on the farm of the defendant. Upon a trial to the court the plaintiff was awarded a judgment for $446.70. This appeal therefrom is taken by the defendant.

In his complaint plaintiff claimed that under the contract of the parties he had furnished materials and labor in the building of the house for which he was to be paid $3,449. In addition thereto he had furnished extras in the way of labor and materials at the request of the defendant which were of the value of $3,145.21. He acknowledged that he had been paid $5,666.35 and asked judgment for the balance of $967.86. Defendant admits the contract and as to the extras he claims that they were in the amount of $2,247.65.

As an additional defense and by way of a counterclaim defendant alleged that the plaintiff did not complete his work under the contract at the time agreed on, or ever, and that he abandoned the same. He also urged that the work performed was not done in a good and workmanlike manner in numerous respects which he specifies in detail. He claimed that because of these derelictions on the part of the plaintiff he has suffered to the extent of $1,400 and that in view thereof plaintiff had been overpaid $1,322 for which he demanded judgment.

The farm on which the house in controversy was built is located near Valley Springs, South Dakota. Plaintiff who lived near Sioux City, Iowa, was a carpenter and builder

of farm buildings with 20 years experience. He and the defendant had known each other for some time, in fact their wives were cousins. The contract which they entered into was oral and provided that the house was to be built according to a blueprint plan, but there were no detailed specifications, written or otherwise, except as to the fireplace. As the court so aptly observed on several occasions during the trial this failure occasioned much of the difficulties aired by the parties in this proceeding.

While plaintiff was in charge of the work and did much of it himself, he had the assistance of his wife and several men whom he employed. In addition defendant and his wife and their hired man also worked on the construction as the demands of their other work permitted. As the work progressed and occasion arose to use materials or do work which had not been previously discussed by the parties, plaintiff on a few occasions decided what should be used or done and on other occasions he consulted the defendant or his wife, or both of them. Apparently no one kept a record of these occurrences.

On this appeal defendant challenges the court's findings 6, 8 and 9. These are as follows:

"6

"That the plaintiff substantially performed his agreement to furnish labor for the construction of said house, breezeway and garage except for the following defects which are slight and were inadvertent and unintentional on the part of the plaintiff, to wit: the plaintiff failed to construct the fireplace hearth in a good and workmanlike manner and the reasonable cost of replacing the same is $20.00; the chimney was built to a height of 21 inches above the house instead of 24 inches, as required by the specifications, and the reasonable cost of raising the same to the specified height is $25.00; the plaintiff failed to construct the stove island in the kitchen in a good and workmanlike

manner and the reasonable cost of leveling the same is $15.00; and the plaintiff failed to put the eavespouts on said house in a good and workmanlike manner and the reasonable value of the labor necessary to correct the same is $8.00."

"8

"That the plaintiff substantially performed his agreement to furnish labor for the interior painting, floor finishing, cabinets and woodwork in said house and breezeway except for the following defect, which is slight and was inadvertent and unintentional on the part of the plaintiff, to wit: the plaintiff failed to finish parts of the walls and the woodwork in the front entry way, living room and on the kitchen windows in a good and wormanlike manner in that the same did not match, and the reasonable value of the labor necessary to finish said walls and woodwork to match is $80.00 and the reasonable value of the materials necessary to finish the same to match is $25.00.

"9

"That during the course of such construction, the plaintiff, at the instance and request of the defendant, furnished extra labor of the reasonable value of $416.40 in addition to the labor necessary to do the interior painting, floor finishing, cabinets and woodwork."

Defendant claims that finding 6 is against the clear preponderance of the evidence because the plaintiff intentionally and permanently abandoned the job with knowledge of these and other defects. As to finding 8 he makes the same claim and also urges that the deviations found are substantial. Concerning finding 9 he argues that there was no contract obligation to pay for such extra labor. On the defendant's claim that the house was not completed on time the court agreed with the defendant and allowed him $120 as damages therefor.

█ In case of building contracts this court has long applied the rule of substantial performance. In Aldrich v. Wilmarth, 3 S.D. 523, 54 N.W. 811, 813, it is written:

> "But where the builders have in good faith intended to and have substantially complied with their contract, although there may be slight defects caused by inadvertence or unintentional omissions, they may recover the contract price, less the damages sustained on account of such defects."

Other cases recognizing this rule are Hulst v. Benevolent Hall Ass'n, 9 S.D. 144, 68 N.W. 200; Burgi v. Rudgers, 20 S.D. 646, 108 N.W. 253; Symms-Power Co. v. Kennedy, 33 S.D. 355, 146 NW. 570. "It is now the general rule in the American courts that a contractor who has rendered 'substantial performance' of the promised equivalent of the contract price can get judgment for that price, with a deduction for minor defects and nonperformance." Corbin on Contracts, § 701. See also 9 Am.Jur., Building and Construction Contracts, § 40; 17 C.J.S. Contracts § 509. This we think a wholesome rule, because as a practical matter literal performance in these things is often practically impossible, and it is especially so in a case such as this where, because of friendship, many of the details of construction apparently were not thought a matter of concern when the contract was entered into. Where the doctrine is applicable recovery is on the contract and not on quantum meruit.

Our cases do not attempt to spell out a rule by which to determine whether performance that is questioned is substantial or otherwise. In the Hulst case where it was necessary to tear down and rebuild the entire east wall in order to make it conform with the contract, this court said [9 S.D. 144, 68 N.W. 201]:

> "This is not a slight defect which can be easily remedied, nor one caused by inadvertence. It is a substantial deviation from what any ordinarily careful contractor would do, and from what any

prudent property owner would expect, or should be required to accept."

There is no fixed formula by which it can be determined because the word substantial, the meat of the doctrine, in this context is a relative term. Consequently it is of necessity a matter of degree. An important factor is whether the deviation in any real or substantial measure defeats the purpose of the contract. Williston on Contracts, Rev. Ed., § 805, generalizes the doctrine thus:

> "Where the rule of substantial performance prevails it is essential that the plaintiff's default should not have been wilful; and the defects must not be so serious as to deprive the property of its value for the intended use nor so pervade the whole work that a deduction in damages will not be fair compensation."

Obviously the extent of the nonperformance must be viewed in relation to the full performance promised. For a stimulating discussion of "Substantial Performance" see Corbin on Contracts, § 700—§ 707.

In the Hulst case this court also said that whether in a given situation there had been substantial performance was a question of fact. Or as phrased by Mr. Justice Cardozo in Jacob & Youngs v. Kent, 230 N.Y. 239, 129 N.E. 889, 891, 23 A.L.R. 1429, "The question is one of degree, to be answered, if there is doubt, by the triers of the facts * * * and, if the inferences are certain, by the judges of the law." In the latter circumstances it is a matter of law.

█ No useful purpose would be served by reproducing in this opinion the evidence pertinent to the findings made. The testimony is voluminous and conflicting. We have painstakingly reviewed it and are more than satisfied that the clear weight of the evidence is not against the findings. It seems to us that the court was warranted in rejecting defendant's claim that plaintiff had willfully abandoned the contract. There was evidence supporting the view that plaintiff honestly believed that the departures

from the contract that he was aware of when he left the job were unimportant and acceptable to the defendant. In our review of the trial court's determination we must be mindful of the fact that in addition to presiding at the trial he viewed the premises. All of the questioned findings are supported by the evidence and fail to reveal any deviations which impair the structure as a whole. In relation to the entire structure they are slight and do not go to the root.

Affirmed.

All the Judges concur.