2003 SD 72

**MATHIS IMPLEMENT COMPANY, Plaintiff and Appellee,**

**v.**

**James Eric HEATH and Rebekah L. Heath, Defendants and Appellants.**

**No. 22571.**

Supreme Court of South Dakota.

Considered on Briefs on March 24, 2003.

Decided June 11, 2003.

Wally Eklund of Johnson, Eklund, Nicholson, Peterson & Fox, Gregory, South Dakota, Attorneys for plaintiff and appellee.

J.M. Grossenburg, Winner, South Dakota, Attorney for defendants and appellants.

MEIERHENRY, Justice.

[¶ 1.] James and Rebekah Heath (Heath) contracted with Mathis Implement Company (Mathis) to install concrete for a shed floor and for footings and walls for a basement for Heath's pre-built home. Mathis sought $28,033.02 for the completed work. After nonpayment by Heath, Mathis brought an action to foreclose its mechanic's lien. As a defense, Heath claimed breach of contract. Heath also counterclaimed for breach of contract and breach of warranty. The trial court ruled in favor of Mathis on all issues. We affirm.

## FACTS

[¶ 2.] In May 2001, Heath purchased property on which to construct a home. Heath contacted Mathis for a bid proposal on concrete work. Mathis submitted three separate bid proposals each of which included plans for a 32 × 54 concrete basement and alternatively priced foam forms for the concrete basement walls. Heath agreed to hire Mathis but rejected the forms recommended in the bids substituting plywood forms instead. Also, Heath wanted to use plastic form liners to achieve a brick like appearance on the basement walls.

[¶ 3.] Prior to using the plastic form liners, Mathis' concrete manager Larry Scholz (Scholz) contacted the supplier of the plastic forms. The supplier advised Scholz that it did not recommend the use of the plastic form liners in this type of application. Scholz claims that he told James that the liners were not recommended and that he would not guarantee the appearance of the walls. James did not recall Scholz's warning or refusal to guarantee the work if the liners were used. Ultimately, the plastic form liners were utilized.

[¶ 4.] Throughout the project, Heath was involved in the construction process. After the footings were formed but before the basement walls were poured, Heath altered the plans and design of the basement from a garage to a walk-out basement which required tearing out and reinstalling the plumbing. Before the concrete was poured, Heath spent three hours moving forms, cutting screws and pulling stakes. After the footings were poured, Heath insisted that an additional concrete pier be poured in the center of the basement. Heath also added and installed pipe through the forms to allow drainage.

[¶ 5.] When the walls were ready to be poured, Mathis delivered the concrete to the site in its ready-mix trucks. Mathis had hired a pump truck from a Fort Pierre, South Dakota company to pump the concrete into the forms. The discharge tube on the pump truck plugged several times during the process causing the operator of the truck to discontinue the job and return to Fort Pierre. At that point, Mathis brought three tractors with front-end loaders to the site in order to build ramps sufficient to allow its ready-mix trucks to access the forms and finish pouring the walls.

[¶ 6.] Heath claimed that the repeated clogging of the tube on the pump truck demonstrated that the concrete mix was defective and as a result the defective mix

caused poor consolidation and weakness of the concrete walls. Consolidation, as explained by Heath's expert Richard Haan (Haan), is "the uniform mixing of and the releasing of the entrapped air within the concrete." When the forms were removed from the basement walls some defects were apparent. On the inside and outside of the walls there were areas with a "honeycomb" appearance. A gap between the ground and the windowsill existed underneath one window on the walkout side. Mathis offered to repair the defects; however, Heath instructed Mathis to leave and not to return.

[¶ 7.] Subsequently, Heath hired Haan, an engineer, for advice regarding the quality of Mathis' work. Based on a visual inspection of the basement walls, Haan concluded that the concrete had a consolidation problem with large voids of entrapped air in the surface and in the interface of the footings and foundation walls causing weakness in the walls. Haan advised Heath not to build on the foundation. As a result, Heath demolished the footings and the basement walls and had them replaced by another contractor. Mathis disputed that there was a problem with the strength of the basement walls and presented expert testimony at trial that the strength of the concrete exceeded the requirements of the Building Code and that it would have been economically feasible to fix the problems instead of demolishing and reconstructing the walls.

[¶ 8.] After a two-day trial to the court, the trial judge found in favor of Mathis and awarded the full contract price of $28,033.02. Heath raises the following issues on appeal:

1. **Whether the trial court's decision in favor of Mathis is clearly erroneous based upon the evidence presented at trial.**

2. **Whether the trial court's finding that the defects were repairable is clearly erroneous.**

3. **Whether the trial court's finding that Mathis did not breach the warranty of fitness for a particular purpose is clearly erroneous.**

## STANDARD OF REVIEW

[¶ 9.] We review a trial court's findings of fact under a clearly erroneous standard.

Clear error is shown only when, after a review of all the evidence, we are left with a definite and firm conviction that a mistake has been made. The trial court's findings of fact are presumed correct and we defer to those findings unless the evidence clearly preponderates against them.

*A.P. & Sons Const. v. Johnson*, 2003 SD 13, ¶ 9, 657 N.W.2d 292, 294 (internal citations omitted). "[T]he question is not whether this court would have made the same findings that the trial court did, but whether on the entire evidence this court is left with a definite and firm conviction that a mistake has been committed." *Fall River County v. South Dakota Dept. of Revenue*, 1999 SD 139, ¶ 15, 601 N.W.2d 816, 821.

## DECISION

1. **Whether the trial court's decision in favor of Mathis is clearly erroneous based upon the evidence presented at trial.**

2. **Whether the trial court's finding that the defects were repairable are clearly erroneous.**

[¶ 10.] Heath's first two issues will be addressed together. Both issues deal with the trial court findings as they relate to Mathis' substantial performance of the contract and the court's award of

the full contract price to Mathis. Mathis' cause of action to enforce its mechanic's lien is based on the doctrine of substantial performance. In response to Mathis' claim, Heath asserted breach of contract as a defense and, in addition, counterclaimed for breach of contract and breach of implied warranty of fitness for a particular purpose and sought damages. Heath claimed that Mathis failed to substantially perform the contract.

[¶ 11.] The doctrine of substantial performance in construction contracts has long been recognized by this Court.

> We have long recognized the rule of substantial performance of building contracts. We first stated the rule in *Aldrich v. Wilmarth*, 3 S.D. 523, 54 N.W. 811 (1893): "But where the builders have in good faith Intended to and Have substantially complied with their contract, although there may be Slight defects caused by inadvertence or unintentional omissions, they may recover the contract price, less the damages sustained on account of such defects." (Emphasis supplied). The other cases recognizing this doctrine are collected in *Dixon v. Nelson*, 79 S.D. 44, 48, 107 N.W.2d 505, 507 (1961).

*Van Den Hoek v. Bradwisch*, 273 N.W.2d 152, 154 (S.D.1978). In applying the doctrine, the trial court found that despite minor cosmetic defects, Mathis had substantially performed the contract. The trial court found that the testimony of Mathis' expert was more credible than Heath's expert and was based upon test results which established that the concrete was of good quality. Additional testimony from the person who demolished the basement walls indicated he found the concrete strong. Conflicting evidence was presented to the trial court regarding the structural integrity of the footings and walls from both lay and expert testimony. The trial court as the trier of fact and the sole judge of credibility entered findings of fact and conclusions of law in favor of Mathis.

[¶ 12.] Additionally, the trial court dismissed Heath's counterclaim and awarded Mathis the full contract price without any reduction for the cost of the defects. Implicit in the trial court's findings of substantial performance is a breach of contract analysis. Substantial performance is not full performance and the party relying on the doctrine admits breaching the contract. *Ahlers Building Supply, Inc. v. Larsen*, 535 N.W.2d 431, 435 (S.D.1995). With a finding of substantial performance, the proper measure of damage is the contract price less the cost of the defect. *Id.*

[¶ 13.] The trial court specified the defects in Finding of Fact 17 as follows:

> After removal of the plywood forms on or about August 31, 2001 defects were observed in the walls as follows:
>
> a. Photos taken show a number of areas of "honeycomb" appearance.
>
> b. Beneath one window on the "walkout" side of the basement (East) there is an area where the concrete did not fill the form.
>
> c. There are a number of areas where the plastic form liners failed and the "brick pattern" appearance failed due to the tearing of the forms.

Mathis presented evidence that the defects could have been repaired at no additional cost to Heath. Heath based the claim for damages on the theory that the only way to cure the defects was to demolish the concrete walls and rebuild them. The court rejected Heath's claim. The court determined that the only defects were the "honeycomb" appearance, the gap under the window and areas of pattern failure. The court awarded Mathis the full contract

price. In awarding damages, the court should have deducted the damages sustained on account of such defects from the contract price. However, since the court rejected Heath's evidence of the damages sustained, she was left with Mathis' evidence of the cost to repair. Mathis' evidence was that the defects could be repaired at no additional cost. Therefore, the trial court's award of the full contract price is not clearly erroneous.

3. **Whether the trial court's finding that Mathis did not breach the warranty of fitness for a particular purpose was clearly erroneous.**

[¶ 14.] Heath asserts that the trial court erred in finding no breach of warranty for a particular purpose. In dismissing Heath's claim, the trial court determined that Heath was involved with the design and specifications of the project and did not totally rely on Mathis' experience and skill in doing the work. Heath contends that the trial court erroneously made these conclusions. Evidence presented at trial, however, supports the trial court's determination. Heath actively participated in the decisions, performed some of the labor, worked several hours measuring, bracing and straightening forms before the concrete was poured, installed additional reenforcement bars and insisted on a concrete center pier, and chose to use plywood forms instead of the recommended styrofoam forms. Additionally, Heath directed the use of plastic form liners despite being advised against it.

[¶ 15.] The trial court's findings on the breach of warranty claim are not clearly erroneous. We affirm on all issues.

[¶ 16.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.