2003 SD 110

**BANK OF AMERICA, N.A., Plaintiff,**

v.

**Murray V. DRIGGS, Karla A. Driggs, Western Bank, Culligan Water Conditioning, J & S Travel Associates, Inc., and Any Person in Possession, Defendants,**

and

**Dacotah Bank, Defendant and Appellee,**

and

**Lora Hubbel, Intervenor and Appellant.**

**No. 22630.**

Supreme Court of South Dakota.

Argued May 28, 2003.

Decided Sept. 10, 2003.

Frederick M. Entwistle of Woods, Fuller, Shultz & Smith, Sioux Falls, SD, Attorneys for appellee.

John P. Mullen of Bangs, McCullen, Butler, Foye & Simmons, Sioux Falls, SD, Attorneys for appellant.

ANDERSON, LEE D., Circuit Judge.

[¶ 1.] Lora Hubbel (Hubbel) appeals from an order in favor of Dacotah Bank (Dacotah Bank). Hubbel is the purchaser of a piece of real property sold at a sheriff's public auction following a foreclosure action by Bank of America. Dacotah Bank is a junior lienholder that attempted to redeem the property pursuant to the 180-day Redemption Mortgage Act (SDCL 21-49-1 et seq.) (Redemption Act). On appeal, Hubbel contends that Dacotah Bank's actions to redeem from the foreclosure sale were insufficient. The trial court held that Dacotah Bank was in substantial compliance with the Redemption Act and directed the Minnehaha County sheriff to issue a sheriff's deed to Dacotah Bank. We affirm the trial court for the reasons set forth herein.

## FACTS

[¶ 2.] Pursuant to a real estate mortgage foreclosure action commenced by Bank of America the Minnehaha County Sheriff sold a piece of real property located in Minnehaha County at public auction on December 26, 2001. The property is legally described as:

> Lot 20, in Block Six of Silver Valley, an Addition to the City of Sioux Falls, Minnehaha County, South Dakota, according to the recorded plat thereof.

[¶ 3.] Hubbel was the high bidder at the foreclosure auction and purchased the property for $83,000. Hubbel obtained a loan from First Premier Bank for which she incurred a loan origination fee of $480. The sheriff issued his sheriff's certificate of sale to Hubbel on December 28, 2001, and the certificate was recorded with the Minnehaha County Register of Deeds on December 31, 2001. Upon becoming the successful bidder, Hubbel obtained dwelling insurance on the property and paid two-months of property insurance premiums for $64.16 on December 28, 2001.

[¶ 4.] On January 3, 2002, Dacotah Bank delivered a notice of redemption together with a check for $83,127.36 to the sheriff's office pursuant to the 180-day Redemption Act. Dacotah Bank's check represented the purchase price plus interest at the rate of 7 percent from the date of sale to the date of redemption. Hubbel was served with the notice of redemption by the sheriff's office on January 4, 2002, and the sheriff issued a certificate of redemption, dated January 3, 2002, which was recorded on January 7, 2002. Dacotah Bank also recorded the notice of redemption on January 7, 2002. At the time of delivery of the check and notice of redemption, Dacotah Bank had no notice of Hubbel's additional expense of insurance or of the loan origination fee.

[¶ 5.] On January 10, 2002, Hubbel recorded a document from her insurance company indicating that Hubbel had obtained a six-month insurance policy on the property and paid a two-month premium deposit. Hubbel did not send or deliver a copy of this document to either Dacotah Bank or its attorney.

[¶ 6.] Disputing the amount of the check, Hubbel informed the sheriff that the amount of the check was insufficient. Shortly thereafter, Hubbel spoke with Rick Entwistle, counsel for Dacotah Bank. Hubbel claimed that the amount of the check was insufficient because it did not cover her loan origination fee or the insurance payment she had made. Hubbel also

discussed the loan origination fee and her insurance premium payment with Dave Bangasser, president of Dacotah Bank.

[¶ 7.] On February 15, 2002, Deputy Sheriff Ken Headrick, based on advice received from his state's attorney, issued a letter to all of the parties involved and informed them that Hubbel had not cashed the check as of that date and that she disputed the amount of redemption.

[¶ 8.] On April 24, 2002, Hubbel paid the first half of the real estate taxes on the property in the amount of $1,118.27. Hubbel also continued to pay the insurance premiums. As of June 28, 2002, the total premium paid was $192.48. Hubbel provided no notice of these additional expenditures to Dacotah Bank.

[¶ 9.] On Friday, June 28, 2002, attorney John Mullen, counsel for Hubbel, faxed a letter to Deputy Sheriff Headrick stating that Hubbel did not accept the validity of Dacotah Bank's redemption and that the sheriff's deed should be issued to Hubbel rather than to Dacotah Bank.

[¶ 10.] On Monday, July 1, 2002, Entwistle faxed a supplemental notice of redemption to Mullen, which was also sent via mail to Mullen and Hubbel the same day. Additionally, Dacotah Bank delivered the supplemental notice of redemption to the sheriff's office on July 1, 2002, with an additional check for $66.38. This check represented the initial insurance premium paid by Hubbel along with interest in the amount of $2.22. The supplemental notice of redemption was recorded on July 1, 2002.

[¶ 11.] On August 13, 2002, Hubbel and Dacotah Bank filed a joint motion for issuance of sheriff's deed. A hearing was held that same day before Judge Severson with the parties filing a joint stipulation of facts. The court held that Dacotah Bank was in substantial compliance with the Redemp-

tion Act when Dacotah Bank gave its initial notice of redemption on January 3, 2002. Additionally, the trial court held that Dacotah Bank was in substantial compliance with the Redemption Act when Dacotah Bank issued its supplemental notice of redemption on July 1, 2002. The trial court also held that SDCL 15–6–6(a) applied to this case to extend the 180 days from Saturday, June 29, 2002, until Monday, July 1, 2002. The court also granted Hubbel's request for an order directing Dacotah Bank to reimburse her for amounts expended to protect her interest in the property, i.e., the additional funds she expended for insurance premiums and real estate taxes, but not for the loan origination fee.

## STANDARD OF REVIEW

[¶ 12.] We review a trial court's conclusions of law under the *de novo* standard, giving no deference to the trial court's conclusions. *Burkhart v. Lillehaug,* 2003 SD 62, ¶ 9, 664 N.W.2d 41, 42. Likewise, construing a statute entails answering a question of law; thus, we review the circuit court's statutory interpretation *de novo. Esling v. Krambeck,* 2003 SD 59, ¶ 6, 663 N.W.2d 671, 675.

[¶ 13.] We review a trial court's findings of fact under a clearly erroneous standard. Clear error is shown only when, after a review of all the evidence, we are left with a definite and firm conviction that a mistake has been made. The trial court's findings of fact are presumed correct and we defer to those findings unless the evidence clearly preponderates against them. *Mathis Implement Co. v. Heath,* 2003 SD 72, ¶ 9, 665 N.W.2d 90, 92.

## ANALYSIS AND DISCUSSION

A. Compliance with the Redemption Act

[¶ 14.] Under the Redemption Act, Dacotah Bank, as the holder of a

mortgage lien in the property junior to Bank of America (the plaintiff in the underlying mortgage foreclosure action) was entitled to redeem the property purchased by Hubbel at the sheriff's sale. SDCL 21–49–33. Any attempted redemption by Dacotah Bank must meet the substantive requirements of the Redemption Act, specifically SDCL 21–49–34, which states:

> Such persons may redeem from the purchaser by paying the person making the sale the amount of the purchase price, plus any sums paid by the purchaser to protect his interest in such property in particular, but not in limitation thereof, for such items as taxes, insurance, maintenance expenses reasonably incurred to preserve the value of the mortgaged premises, or payments on a superior lien, together with interest on the total judgment at the same rate of interest as provided in the mortgage.

[¶ 15.] In this case, Hubbel was served with Dacotah Bank's notice of redemption, together with a check in the amount of $83,127.36 on January 3, 2002, just six days after the sheriff's certificate of sale was issued. This check represents all amounts of which Dacotah Bank had notice since prior to redemption, Hubbel had not recorded with the Register of Deeds or notified the Minnehaha County Sheriff or Dacotah Bank of any additional payments she had made to protect her interest in the property. The parties agreed in their joint stipulation of facts that Dacotah Bank was under no statutory obligation to contact Hubbel prior to attempting redemption to determine what, if any, payments she had made to protect her interest in the property.

[¶ 16.] Although the trial court held that Dacotah Bank substantially complied with the Redemption Act, we hold Dacotah Bank did, in fact, actually comply with the Redemption Act in January 2002. By serving Hubbel with its notice of redemption along with a check for the purchase price and any sums paid by the purchaser to protect her interest in the property of which Dacotah Bank had notice, Dacotah Bank actually complied with the Redemption Act. Dacotah Bank paid all expenses of Hubbel of which it had notice, and we do not impose any additional responsibility upon Dacotah Bank to make further inquiry in order for redemption to be effective. This is of course subject to the proviso that Dacotah Bank reimburse Hubbel for any amounts reasonably expended to protect her interest in the property *see* SDCL 21–49–34 that are brought to the Bank's attention after initiating redemption.[1]

## CONCLUSION

[¶ 17.] The trial court correctly concluded that Dacotah Bank was entitled to the issuance of the sheriff's deed. Dacotah Bank validly redeemed the property by actual compliance with the Redemption Act. The trial court was correct in ordering Dacotah Bank to further reimburse Hubbel for the additional expenses she incurred to protect her interest in the property.

[¶ 18.] Affirmed.

[¶ 19.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶ 20.] ANDERSON, LEE, Circuit Judge, for SABERS, Justice, disqualified.

---

1. Under our decision, the purchaser incurring these expenses to protect his interest in the property has the responsibility to provide notice of the same. The trial court would have jurisdiction to order reimbursement of these expenses to the purchaser, as Judge Severson has done in this case.